```
                                                    ┌─────────────────────────────┐
                                                    │ USDC SDNY                   │
UNITED STATES DISTRICT COURT                        │ DOCUMENT                    │
SOUTHERN DISTRICT OF NEW YORK                       │ ELECTRONICALLY FILED        │
------------------------------------------------X   │ DOC #: _____     │
                                            :       │ DATE FILED: May 16, 2016    │
CARMEN D. SANTIAGIO,                        :       └─────────────────────────────┘
                                            :
                           Plaintiff,       :            15-cv-0949 (KBF)
                                            :
              -v-                           :          OPINION & ORDER
                                            :
CAROLYN COLVIN, Acting Commissioner of      :
Social Security,                            :
                                            :
                           Defendant.       :
                                            :
------------------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

        Plaintiff Carmen D. Santiago, pro se, seeks review of the decision by

defendant Commissioner of Social Security (the "Commissioner") finding that she

was not disabled and not entitled to Supplemental Security Income benefits under

Title XVI of the Social Security Act (the "Act").

        Plaintiff filed a claim for disability benefits on July 20, 2011 and for

supplemental security income on July 28, 2011, alleging that her disability began

on July 25, 2008.  (Tr. 27.)[1]  The Commissioner denied plaintiff's application on

October 6, 2011, (Tr. 86-92), and plaintiff requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. 100-101.)  The hearing was held on March

29, 2013 before ALJ Jack Russak.  (Tr. 27.)  Plaintiff was represented by counsel at

that time.  On April 15, 2013, ALJ Russak found that plaintiff was not disabled

under the Act.  (Tr. 27-36.)

---

[1]        Citations to "Tr." refer to pages of the administrative record.

Plaintiff requested that the Appeals Council review the ALJ's decision.  The Appeals Council denied the request on November 25, 2014, making the ALJ's decision the final determination of the Commissioner.  (Tr. 1-9.)

On February 9, 2015, plaintiff filed this action pro se, seeking judicial review of the ALJ's April 15, 2013 decision.  (ECF No. 2.)  She filed an Amended Complaint on April 8, 2015, attaching four additional medical documents not previously provided to the ALJ or Appeals Council.  (ECF No. 8 ("Am. Compl.").)  Before the Court is defendant's motion for judgment on the pleadings, (ECF No. 19), and a submission by plaintiff, which the Court construes as a cross-motion for judgment on the pleadings, (ECF No. 22.)  For the reasons set forth below, defendant's motion is GRANTED, and plaintiff's motion is DENIED.

## I.    FACTUAL BACKGROUND[2]

Plaintiff is a forty-three year old woman.  (Tr. 169).  She completed high school in Puerto Rico.  (Tr. 214.)  She is the single mother of three young children, ages six, five, and three at the time of her application.  (Tr. 222.)  Her oldest child has autism.   (Tr. 222.)   Plaintiff has depression, anxiety, mood disorder, and sleeping problems.  (Tr. 213.)

---

[2]    The Court recites here only those facts relevant to its review.  A further recitation of plaintiff's medical history is contained in the Administrative Record.

A.     <u>Medical Evidence Before the ALJ</u>

    1.     <u>Treating Physician Evidence</u>

In May and June 2008, plaintiff visited Dr. Fitzroy Elliott at Harlem Hospital, reporting stress and depression. (Tr. 308, 314-16.) Dr. Elliott referred her to a psychiatrist. (Tr. 314.)

On July 25, 2008, plaintiff began receiving mental health treatment at Callen Lorde Community Health Center. (Tr. 290-95.) She was treated by psychiatrist Dr. Susan Lee, who diagnosed her with major depressive disorder and generalized anxiety disorder. (Tr. 292.) Dr. Lee noted that plaintiff appeared anxious and depressed but had a stable mood, goal-directed form of thought, normal speech, orientation, memory, intelligence, and judgment, and ability to sustain concentration. (Tr. 292.) Dr. Lee prescribed Lexapro for depression and anxiety and Trazodone for insomnia. (Tr. 292.) She also referred plaintiff for possible therapy. (Tr. 292.)

At a follow-up visit on September 24, 2008, plaintiff reported feeling better on her medication, and no side effects. (Tr. 290.) She reported that she still felt "a little depressed and anxious sometimes" and poor concentration and memory. (Tr. 290.) Dr. Lee performed a mental status evaluation and found that plaintiff's mood was less depressed and anxious, and that she was calm and cooperative, with full range of affect and good insight, and judgment. (Tr. 290). Dr. Lee continued to prescribe Lexapro and Trazodone and told plaintiff to follow-up in one month. (Tr. 290.)

On November 3, 2008, plaintiff visited Dr. Elliott at Harlem Hospital.  Dr. Elliott noted her symptoms were of low to moderate severity.  (Tr. 306.)  Plaintiff was to follow up in three months.  (Tr. 307.)

On April 27, 2011, plaintiff visited the Martin Luther King Center for psychiatric follow-up evaluation (her prior evaluation there was in May 2010).  (Tr. 325.)  Dr. Christopher Leggett performed a mental status evaluation and determined that plaintiff had adequate insight, judgment, concentration, and orientation.  He noted that plaintiff was taking Lexapro intermittently, with good effect.  (Tr. 325.)  Dr. Leggett continued plaintiff's Lexapro prescription.  (Tr. 325.)

On July 20, 2011, plaintiff visited Dr. Leggett again for evaluation.  She reported restless sleep and significant residual stress from caring for her autistic child.  (Tr. 324.)  A mental status evaluation indicated plaintiff had adequate insight, judgment, concentration, and orientation, but she appeared anxious and depressed.  (Tr. 324.)  Plaintiff was prescribed Lexapro, Trazodone, perphenazine and trilafon.  (Tr. 324.)

On June 8, 2012, Dr. Braham B. Harneja of Bronx-Lebanon Hospital Center completed an assessment form for plaintiff, indicating that plaintiff had been receiving treatment there since September 14, 2011.  (Tr. 358-59.)  Plaintiff visited the psychiatrist once a month and a therapist once every two weeks.  (Tr. 358.)  Dr. Harneja listed a diagnosis of mood disorder, not otherwise specified.  (Tr. 359.)  Plaintiff exhibited depressed mood, low energy, anxiety, irritability, and sleep disturbances.  (Tr. 358.)  Dr. Harneja also stated plaintiff's Global Assessment

Functioning score was 60, and that her symptoms can be expected to last twelve months. (Tr. 359.)

Dr. Harneja also opined that plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment and maintain attention and concentration, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. He opined, however, that she had no ability to interact with supervisors, deal with work stresses, function independently, and perform complex or simple job instructions. (Tr. 360-61.) He further opined, however, that plaintiff could manage her own benefits. (Tr. 362.)

2.      Evidence from Therapist / Social Worker

Plaintiff also received treatment from Kristin Litvak, a licensed master social worker ("LMSW") once every two weeks since September 14, 2011. Litvak noted that plaintiff experienced symptoms of anhedonia, crying spells, low energy, feelings of worthlessness, and anxiety. Plaintiff's medications included Lexapro, Trazodone, and Abilify. (Tr. 356.)

Previously, plaintiff received psychotherapy from Benjamin Rosenberg at the Union Settlement Johnson Counseling Center once a week. (Tr. 321.)

3.      Consultative Examinations

On September 8, 2011, consulting psychologist Dr. Howard Tedoff examined plaintiff. He diagnosed her with depressive disorder not otherwise specified, adjustment disorder with anxiety and depressed not ruled out, and bipolar disorder not ruled out. (Tr. 336.) Dr. Tedoff observed that plaintiff was cooperative,

adequately groomed, and presented adequate social skills, relating to others, and posture and gate. (Tr. 335.) There was no significant evidence of hallucinations, delusions, or disordered thinking. (Tr. 335.) Her judgment, insight, and memory were intact. (Tr. 335.) Plaintiff exhibited mild impairment in attention and concentration, appeared stressed, tearful, depressed, and fearful about the future. She had a below average cognitive functioning. (Tr. 335-36.)

Dr. Tedoff opined that plaintiff could follow and understand simple directions, perform simple tasks, learn new tasks, and manage her own benefits. However, he opined that she would have difficulty relating with others, managing home-related stress, and maintaining a regular schedule. (Tr. 336-37.)

On October 4, 2011, State agency psychiatrist Dr. R. Altmansberger reviewed plaintiff's record and found that none of plaintiff's impairments, alone or in combination, met or equaled the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 338-51.) He opined that plaintiff could follow and understand simple directions, make simple work-related decisions, maintain concentration and attention for an eight hour workday with normal breaks, complete a normal work week, and get along with supervisors with only moderate limitations. (Tr. 354.)

B.    Non-Medical Evidence Before the ALJ

1.    Recent Work History

Plaintiff had worked for approximately two months from April to June 2011 as a substitute bilingual Head Start teacher at East Harlem Council for Human Services, earning $13.70 per hour, 10 hours per week. (Tr. 44, 198.) Plaintiff also

worked as a babysitter in her home caring for a one-year old child in 2012, including feeding and changing diapers. (Tr. 49-50, 65.)[3]

### 2. Plaintiff's Hearing Testimony

Plaintiff was represented by counsel at her 2013 administrative hearing; a Spanish interpreter was also present.[4] (Tr. 45-46.)

Plaintiff testified that she lived with her three children. (Tr. 51.) Her oldest child had autism. (Tr. 51.) She traveled from her home in the Bronx via train or taxi to see her mother in Manhattan and her boyfriend a few blocks away in the Bronx. (Tr. 51-52.) Her brother visited her at home once a month and accompanied her food-shopping, which she claims she did only once a month.[5] (Tr. 55.)

Plaintiff denied cooking at home, except for occasional breakfast for her children. (Tr. 58-59.) Plaintiff testified that her children usually ate breakfast and lunch at school, and her eldest son's home attendant cooked dinner for the entire family. (Tr. 58-59.)[6]

Plaintiff walked her two younger children to and from school daily, but the school was near her home. (Tr. 59.) During the day, she either sleeps, takes walks, or cleans. (Tr. 61-62.)

---

[3]      While she lived in Puerto Rico, plaintiff was a teacher's assistant from 1999-2006, and also held jobs as a receptionist and salesperson from 1994 to 1998. (Tr. 214.)
[4]      The ALJ asked plaintiff if she was certain that she would like to have an interpreter present, given that she spoke some English and had worked as a bilingual teacher. Plaintiff responded that she did want an interpreter. (Tr. 44.)
[5]      According to plaintiff's application for benefits, she shopped two to three times per week. (Tr. 225.)
[6]      According to plaintiff's application for benefits, she cooked easy meals, including dinners of rice, meat, salad, and spaghetti. (Tr. 223.)

Plaintiff reported that she suffered from anxiety, depression, and mood disorder, and took Abilify, citalopram, and Trazadone. (Tr. 57.) She said the medication made her sleepy. (Tr. 57.) She saw a psychiatrist once a month and a therapist every other week. (Tr. 56.)

### 3.   Vocational Expert Testimony

The ALJ enlisted the assistance of vocational expert ("VE") Robert Neal at the hearing. The ALJ asked the VE to consider the following hypothetical:

> Assuming a person of claimant's age, education, and work experience, [who] would be restricted—and the restrictions are only based on non-exertional limitations. Work is limited to simple, routine tasks, work in a low-stress environment with no decision making. Low stress job with no changes in work setting, work off-task five percent of the day in addition to regularly scheduled breaks. Work with no judgment require[d] on the job. And no interaction with the public, occasional interaction with coworkers.

(Tr. 68.) The VE stated that such an individual could perform work as a ticketer (1,000 jobs regionally and over 100,000 jobs nationally), labeler (2,000 jobs regionally and 170,000 jobs nationally), or microfilm monitor (5,000 jobs regionally and 150,000 jobs nationally) (referring to U.S. Department of Labor's Dictionary of Occupational Titles (4th ed. rev. 1991) Codes 652.685-018, SVP2, 920.687-126, SVP 2, and 208.685-022, SVP 2, respectively)).)

### C.   ALJ Decision

Plaintiff applied for benefits in July 2008, alleging that her disability began on July 25, 2008. (Tr. 27.)[7] On April 15, 2013, ALJ Russak denied plaintiff's

---

[7]     However, plaintiff previously had disability insurance until September 20, 2011; to be found eligible for benefits for her instant application, plaintiff must demonstrate her disability commenced on or before September 20, 2011. 42 U.S.C. §§ 432(a)(1)(A) and (c)(1); 20 C.F.R. § 404.131.

application, after conducting the five-step sequential evaluation process.  (See Tr. 27-36.)  The ALJ found that at step one, plaintiff had not engaged in substantial gainful activity since the date of her alleged disability onset.  (Tr. 29.)  At step two, he found that plaintiff had the following medically determinable impairments that are severe under the Act:  adjustment disorder, depressive disorder, and anxiety disorder.  (Tr. 29.)

At step three, however, the ALJ found that no impairment or combination of impairments that met or medically equaled the severity of any impairment listed in Appendix 1.  (Tr. 30.)  In particular, he found that although plaintiff had moderate difficulties—but not marked limitations—in activities of daily living, maintaining social functioning, and maintaining concentration, persistence of pace.  He also found that plaintiff had no episodes of extended duration decompensation.  (Tr. 30).

At step four, the ALJ determined plaintiff's RFC and found that plaintiff could perform a full range of work at all exertional levels, limited to simple routine tasks with low stress, defined as having no decision-making and no changes the work setting.  (Tr. 30.)  Plaintiff would be allowed to work off-task five percent of the day in addition to regularly scheduled breaks;  she would have no interaction with the public, occasional interaction with co-workers, and close supervision three times daily.  (Tr. 32.)  In making this determination, the ALJ evaluated the record evidence, including those from treating physicians, consultative examiners, and plaintiff's hearing testimony.  (Tr. 32-34.)  The ALJ also found that plaintiff is unable to perform any past relevant work.  (Tr. 34.)

At step five, the ALJ concluded that based on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 and the testimony of the vocational expert, plaintiff was able to perform jobs existing in significant numbers in the national economy. (Tr. 35-36.) Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 36.)

> D.   Additional Evidence Not Before ALJ

Plaintiff submitted four documents that do not appear to be in the Administrative Record:

- Psychological Evaluation Report dated March 11, 2014, issued by Bronx-Lebanon Hospital Center (unknown physician). It is incomplete and cut off mid-sentence. (Am. Compl. at 13-16.)

- Annual Health Screening Review Form at Lenox Hill Hospital (physician name illegible) dated October 10, 2014, which indicates a diagnosis of depression and bipolar disorder and hypoglycemia. (ECF No. 22, at 7.)

- MRI results from Dr. Michael Paley, Third Avenue Open MRI, dated January 28, 2015. (Am. Compl. at 18-19.) The MRI results indicate that plaintiff had bulging discs in her lumbar spine. (Id.)

- A prescription for physical therapy from Gabriel L. Dassa, D.O., dated March 5, 2015. (Am. Compl. at 17.)

## II.   APPLICABLE LEGAL PRINCIPLES

> A.   Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same

standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).  Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

B.    The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).  The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920.  The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to

11

do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ["Appendix 1"]. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citation and footnote omitted); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998). The claimant bears the burden of proof in steps one through four, while the Commissioner bears the burden in the final step. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

      C.     Review of the ALJ's Judgment

      The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the ALJ applied the correct legal standard and whether his or her findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final. See Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." (citation omitted)); 42 U.S.C. § 405(g).

Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If the Commissioner and ALJ's findings as to any fact are supported by substantial evidence, then those findings are conclusive.  42 U.S.C. § 405(g); Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  When the Appeals Council denies review after considering new evidence, the court reviews the entire administrative record— which includes the new evidence—and determines whether there is substantial evidence to support the decision.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)

While the Court must consider the record as a whole in making this determination, it is not for this Court to decide de novo whether the plaintiff is disabled.  See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997); Veino, 312 F.3d at 586 ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").  The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists.  See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." (citation omitted)); see also DeChirico, 134 F.3d at 1182-83 (affirming an ALJ decision where substantial evidence supported both sides).

13

Finally, it is the function of the Commissioner, not the Court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)) (internal quotation mark omitted); see also Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the ALJ's [credibility] determination because he heard plaintiff's testimony and observed his demeanor." (citations omitted)).  An ALJ's decision on credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Soc. Sec. Ruling 96–7p, 61 Fed. Reg. 34484.

> D.   The Treating Physician Rule

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to a treating physician's opinion that is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted); see also Burgess, 537 F.3d at 128.  An ALJ who does not accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment

14

relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." Halloran, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). After considering these factors, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Although the ALJ will consider a treating source's opinion as to whether a claimant is disabled or able to work, the final responsibility for deciding those issues is reserved to the Commissioner, and the treating source's opinion on them is not given "any special significance." 20 C.F.R. § 404.1527(d)(3); see also Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 (July 2, 1996); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). When a finding is reserved to the Commissioner, "the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell, 177 F.3d at 133. It is the ALJ's duty, as the trier of fact, to resolve conflicting medical evidence. See Richardson, 402 U.S. at 399.

E.      The ALJ's Duty to Develop the Record

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "the ALJ generally has an affirmative obligation to develop the administrative record." Burgess, 537 F.3d at 128 (citations and internal quotation marks omitted). SSA regulations require an ALJ to "inquire fully into the matters at issue and . . . receive in evidence the testimony of witnesses

and any documents which are relevant and material to such matters." <u>Id.</u> (quoting 20 C.F.R. § 702.338).  "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" <u>Id.</u> at 129 (citation omitted); <u>Calzada v. Astrue</u>, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing <u>Perez</u>, 77 F.3d at 47)).

  F. <u>Review of New Evidence</u>

  If a plaintiff submits new evidence for which there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding," 42 U.S.C. § 405(g), the district court may direct the ALJ to consider such evidence on remand. Such evidence must meet the following criteria:  (1) it is "new and not merely cumulative of what is already in the record," (2) it is "relevant to the claimant's condition during the time period for which benefits were denied and probative," and (3) there was "good cause for her failure to present the evidence earlier." <u>Tirado v. Bowen</u>, 842 F.2d 595, 597 (2d Cir. 1988).  As to the second element, materiality requires "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." <u>Id.</u>  The relevant period for the evaluation is "between the date of the alleged onset of disability and the date of the ALJ's decision." <u>Collins v. Comm'r of Soc. Sec.</u>, 960 F. Supp. 2d 487, 501

(S.D.N.Y. 2013).  As to the third element, evidence that did not exist at the time of the ALJ's hearing constitutes good cause.  Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004).

III.   DISCUSSION

A.   Plaintiff's Submission of New Evidence

Plaintiff submitted four documents with her Complaint and cross-motion, all of which post-date the ALJ's decision.

The two documents submitted by plaintiff regarding "bulging discs" and one relating to hypoglycemia, (Am. Compl. at 17-19; ECF No. 22 at 7), are not relevant to the condition for the time period for which benefits were denied.  Tirado, 842 F.2d at 597.  Plaintiff "did not establish that any of these conditions was a severe impairment during the relevant period."  Guerra v. Colvin, 618 F. App'x 23, 24 (2d Cir. 2015).  Instead, these issues were diagnosed after the ALJ issued his decision, and do not relate to the bases for disability in plaintiff's application for benefits (namely, psychiatric disorders of depression, anxiety, and adjustment disorder).

As to the document containing portions of a March 11, 2014 psychological evaluation, plaintiff has not demonstrated that she had good cause for failure to submit it to the Appeals Council, whose decision was not rendered until November 25, 2014.  (Tr. 1-9.)  Indeed, plaintiff submitted other documents post-dating the ALJ's decision to the Appeals Council, but neglected to include this report.  (See Tr. 10-19.)  Because plaintiff has not demonstrated good cause for failure to submit this document into the record earlier, this Court will not direct the ALJ to reconsider.

See Tirado, 842 F.2d at 597; Johnston v. Colvin, No. 13 Civ. 2710 VEC FM, 2015 WL 657774, at *10 (S.D.N.Y. Feb. 13, 2015), report and recommendation adopted, 2015 WL 1266895 (S.D.N.Y. Mar. 18, 2015) ("[Plaintiff] consequently cannot show good cause for failing to incorporate any new evidence into her prior submissions to the ALJ, since any such information would have been available at that time.").

In addition, plaintiff has not demonstrated that there is a reasonable possibility that this evidence would have affected the decision as to her disability status; therefore, it also should not be considered by the Commissioner. The report comprises of background information that is cumulative of other record materials reviewed by the ALJ. It also contains cognitive functioning test results for which the examiner stated, "Ms. Santiago's low scores should be interpreted with caution. It would be advisable to re-test Ms. Santiago with a validated Spanish version of the test, once her anxiety is better managed." (Am. Compl. at 16.) Given the report's internal evaluation of unreliability, it is not reasonably likely that the Commissioner would have arrived at a different decision as to plaintiff's disability status.

B.    ALJ's Decision

Plaintiff does not specifically challenge any aspect of the ALJ's decision. Nevertheless, this Court has conducted a review and finds that the ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920, and that his findings were supported by substantial evidence.

At steps one and two of the sequential analysis, the ALJ found in plaintiff's favor—that plaintiff did not have substantial gainful activity and that she did have

severe impairments that limited her ability to do basic work activities—namely, her depression, anxiety, and adjustment disorder.

At step three of the sequential analysis, the ALJ found that the treating physician evidence does not show that plaintiff's impairments met or medically equaled the severity of one of the listed impairments in Appendix 1 of the Regulations.  In particular, the ALJ found no evidence that plaintiff did not meet any of the listing's requirements:  suffering marked restrictions in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, and pace, or episodes of decompensation, each of extended duration.  (Tr. 30.)  He found that any restrictions were moderate in nature, not marked.  In reaching this conclusion, the ALJ relied on plaintiff's psychiatric treatment records that indicated that while plaintiff had reported somewhat impaired concentration, she was independently managing her household and had no debilitating social functioning issues.  She had never been hospitalized and has never had a nervous breakdown, manic episode, or suicide attempt.  (Tr. 30.)  The Court finds that the ALJ's conclusions was supported by reasoned analysis and substantial evidence from the treating physicians' records.

At step four, the ALJ determined that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with several non-exertional limitations: 1) simple routine tasks, 2) no decision-making or changes in work setting, 3) permission to work off task 5% of the day in addition to scheduled breaks, 4) no judgment required at the job, 5) no interaction with the

public, 6) occasional interaction with coworkers, and 7) close supervision up to three times per day.  (Tr. 30.)  In reaching this conclusion, the ALJ considered evidence from plaintiff's treating physicians Drs. Lee, Elliott, and Leggett; her therapists Rosenberg and Litvak, and state consultative examiner Dr. Altmansberger.

The ALJ also gave little weight to the assessment of plaintiff's latest psychiatrist, Dr. Harneja, and that of the consultative examiner, Dr. Tedoff.  The treating physician's opinion as to plaintiff's ability to work is not of "any special significance."  See 20 C.F.R. § 404.1527(d)(3).  Furthermore, the ALJ found that both Dr. Harneja and Dr. Tedoff's conclusions that plaintiff could not perform work were belied by substantial evidence, namely, same-day mental status examinations and other positive prognoses.  (Tr. 34.)  See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence.").  In addition, Dr. Tedoff is a one-time consultative non-treating physician and his conclusions were also contrary to that of a second consultative examiner, Dr. Altmansberger.  See Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013).  Thus, the ALJ's lower weighting of Drs. Harneja and Tedoff's opinions regarding plaintiff's ability to work was evaluate.

Finally, the ALJ evaluated plaintiff's own testimony, which he found not fully credible.  (Tr. 33.)  The ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment."  Tejada, 167 F.3d at 776 (citation omitted).  As with any finding of fact, "[i]f the Secretary's findings are

supported by substantial evidence ... the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Perez v. Barnhart, 234 F.Supp.2d 336, 341 (S.D.N.Y. 2002) (quoting Aponte, 728 F.2d at 591). An ALJ's credibility determination is thus entitled to deference, unless it is not set forth "with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ's determination of plaintiff's credibility is set forth with "sufficient specificity." Id. He pointed to the fact that plaintiff claimed that her English proficiency is limited, even though she responded to some questions in full English, had never required Spanish interpretation for any prior treatment or applications, and had previously served in a number of jobs including as a bilingual teacher. (Tr. 33.) The ALJ also questioned how severe plaintiff's psychiatric condition was given that she took care of her own three children in addition to babysitting an infant. (Tr. 33.) Finally, plaintiff's application materials contradicted her testimony on several points, including the fact that she cooked dinner for her children and that she grocery shopped on her own two to three times a week. (Tr. 33.) The ALJ's RFC analysis considered the objective medical evidence along with other indicia of the plaintiff's reliability, and thus the Court must defer to his determination to discount plaintiff's "subjective complaints." Perez, 234 F. Supp. 2d at 341 (quoting Aponte, 728 F.2d at 591). Accordingly, the ALJ's credibility determination must be upheld.

At step five, the ALJ, after considering the testimony of vocational expert, properly concluded that based on the Medical-Vocational Guidelines, there were jobs in the national economy for an individual with plaintiff's age, education, work experience, and RFC.  (Tr. 34-35.)  The ALJ's RFC determinations are supported by substantial evidence and therefore a proper basis for the VE's determination.  See Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009).  Thus, the testimony of the vocational expert was proper and the ALJ did not err in relying on it to reach his conclusion at step five.

IV.    CONCLUSION

For these reasons, defendant's motion for judgment on the pleadings is GRANTED and plaintiff's motion for judgment on the pleadings is DENIED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 18 and 22, to enter judgment for defendant, and to terminate this action.


        SO ORDERED.

Dated:        New York, New York
              May 16, 2016

                                    _____
                                         KATHERINE B. FORREST
                                         United States District Judge


CC:    Carmen D. Santiago
       450 E. 144th Street, Apt. 1D
       Bronx, NY 10454